## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>AK STEEL HOLDING CORPORATION, RALPH S. MICHAEL, III, DENNIS C. CUNEO, SHERI H. EDISON, MARK G. ESSIG, WILLIAM K. GERBER, GREGORY B. KENNY, ROGER K. NEWPORT, DWAYNE A. WILSON, VICENTE WRIGHT, ARLENE M. YOCUM, CLEVELAND-CLIFFS INC., and PEPPER MERGER SUB INC., )<br><br>Defendants. ) | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on December 3, 2019, 2019 (the "Proposed Transaction"), pursuant to which AK Steel Holding Corporation ("AK Steel" or the "Company") will be acquired by Cleveland-Cliffs Inc. ("Parent") and Pepper Merger Sub Inc. ("Merger Sub," and together with Parent, "Cleveland-Cliffs").

2.      On December 2, 2019, AK Steel's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Cleveland-Cliffs.  Pursuant to the terms of the Merger Agreement, AK Steel's

stockholders will receive 0.40 shares of Parent common stock for each share of AK Steel common stock they own.

3.       On January 8, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.       The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.       This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.       Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.       Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of AK Steel common stock.

9.      Defendant AK Steel is a Delaware corporation and maintains its principal executive offices at 9227 Centre Pointe Drive, West Chester, Ohio 45069.  AK Steel's common stock is traded on the New York Stock Exchange under the ticker symbol "AKS."

10.      Defendant Ralph S. Michael, III is Chairman of the Board of the Company.

11.      Defendant Dennis C. Cuneo is a director of the Company.

12.      Defendant Sheri H. Edison is a director of the Company.

13.      Defendant Mark G. Essig is a director of the Company.

14.      Defendant William K. Gerber is a director of the Company.

15.      Defendant Gregory B. Kenny is a director of the Company.

16.      Defendant Roger K. Newport is Chief Executive Officer and a director of the Company.

17.      Defendant Dwayne A. Wilson is a director of the Company.

18.      Defendant Vicente Wright is a director of the Company.

19.      Defendant Arlene M. Yocum is a director of the Company.

20.      The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.      Defendant Parent is an Ohio corporation and a party to the Merger Agreement.

22.      Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.      Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of AK Steel (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of November 26, 2019, there were approximately 316,448,045 shares of AK Steel common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

30.     AK Steel is a leading producer of flat-rolled carbon, stainless, and electrical steel products, primarily for the automotive, infrastructure and manufacturing, including electrical power, and distributors and converters markets.

31.     Through its subsidiaries, the Company also provides customer solutions with carbon and stainless steel tubing products, hot- and cold-stamped components, and die design and tooling.

32.     On December 2, 2019, AK Steel's Board caused the Company to enter into the Merger Agreement with Cleveland-Cliffs.

33.     Pursuant to the terms of the Merger Agreement, AK Steel's stockholders will receive 0.40 shares of Parent common stock for each share of AK Steel common stock they own.

34.     According to the press release announcing the Proposed Transaction:

Cleveland-Cliffs Inc. (NYSE: CLF) and AK Steel Holding Corporation (NYSE: AKS) are pleased to announce that they have entered into a definitive merger agreement pursuant to which Cliffs will acquire all of the issued and outstanding shares of AK Steel common stock. Lourenco Goncalves, Chairman of the Board, President and CEO of Cliffs, will lead the expanded organization.

Under the terms of the merger agreement, AK Steel shareholders will receive 0.40 shares of Cliffs common stock for each outstanding share of AK Steel common stock they own. Upon completion of the transaction, Cliffs shareholders will own approximately 68% and AK Steel shareholders will own approximately 32% of the combined company, respectively, on a fully diluted basis. . . .

Additional Transaction Details & Governance

Following completion of the transaction, with Mr. Goncalves leading the expanded organization, Mr. Newport will retire as CEO and a Director of AK Steel. Three existing members of AK Steel's Board of Directors will join the Cliffs Board, and two existing Cliffs Board members will step down, bringing the Cliffs Board to 12 members in total. AK Steel will become a direct, wholly-owned subsidiary of Cliffs and will retain its branding and corporate identity. Cliffs will continue to be listed

on the NYSE with its headquarters in Cleveland, while maintaining a significant presence at AK Steel's current offices in West Chester, Ohio along with its Research and Innovation Center in Middletown, Ohio.

The transaction is expected to close in the first half of 2020, subject to approval by the shareholders of both companies, receipt of regulatory approvals and satisfaction of other customary closing conditions.

Cliffs has obtained an approximately $2 billion financing commitment from Credit Suisse in connection with a new Asset Backed Loan and the refinancing of AK Steel's 2023 senior secured notes.

Advisors and Counsel

Moelis & Company LLC and Credit Suisse are acting as financial advisors to Cliffs and Jones Day is serving as legal counsel. Goldman Sachs & Co. LLC is acting as financial advisor to AK Steel and Weil, Gotshal & Manges LLP is serving as legal counsel.

35.     The Merger Agreement contains a "no solicitation" provision that prohibits the

Individual Defendants from soliciting alternative proposals and severely constrains their ability to

communicate and negotiate with potential buyers who wish to submit or have submitted

unsolicited alternative proposals.  Section 6.2(a) of the Merger Agreement provides:

Each of the Company and Parent agree that, except as expressly permitted by this Section 6.2 from the date of this Agreement to the Effective Time or, if earlier, the termination of this Agreement in accordance with its terms, neither it nor any of its Subsidiaries shall, and each shall cause its respective Subsidiaries and its and their respective officers, directors, employees, investment bankers, attorneys, accountants and other advisors, agents or representatives (such Persons, collectively, "Representatives") not to, directly or indirectly:

(i) initiate, solicit or knowingly encourage or facilitate the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, any Company Acquisition Proposal, in the case of the Company, or any Parent Acquisition Proposal, in the case of Parent;

(ii) enter into, engage in, maintain, continue or otherwise participate in any discussions or negotiations with, or furnish or otherwise make available any material non-public information or data to, any Person other than the other Parties, or any of their Affiliates or any of their respective Representatives (a "Third Party") that is reasonably likely to be considering or seeking to make, or has made within the 12 months preceding the date of this Agreement, a Company Acquisition

Proposal (in the case of the Company) or a Parent Acquisition Proposal (in the case of Parent), in each case relating to, or as would reasonably be expected to lead to, a Company Acquisition Proposal or a Parent Acquisition Proposal, respectively; or

(iii) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement, memorandum of understanding or other Contract (other than an Acceptable Confidentiality Agreement entered into in accordance with Section 6.2(b)) relating to, or that would reasonably be expected to lead to, a Company Acquisition Proposal (in the case of the Company) or Parent Acquisition Proposal (in the case of Parent) (any of the foregoing, an "Alternative Acquisition Agreement").

(iv) Each of the Company and Parent shall, and shall cause its Subsidiaries and its and their respective Representatives to, cease immediately and cause to be terminated any and all existing activities, discussions or negotiations, if any, with any Third Party or its Representatives, with respect to any Company Acquisition Proposal (in the case of the Company) or Parent Acquisition Proposal (in the case of Parent), or any inquiry, proposal or offer that would reasonably be expected to lead to, any Company Acquisition Proposal or Parent Acquisition Proposal, as the case may be, and shall promptly request that each Third Party to whom confidential information has been furnished or otherwise made available by or on behalf of such Party or any of its Subsidiaries within the 12 month period preceding the date of this Agreement in connection with, or for the purpose of evaluating, a Company Acquisition Proposal or Parent Acquisition Proposal, promptly return or destroy all such confidential information so furnished or otherwise made available. Neither the Company nor Parent shall, and each shall cause its Subsidiaries not to, terminate, waive, amend, release or modify in any respect any standstill or other similar provision of any confidentiality agreement to which any of them is a party in connection with a Company Acquisition Proposal or Parent Acquisition Proposal, respectively, or other proposal, inquiry or offer that would reasonably be expected to lead to a Company Acquisition Proposal or Parent Acquisition Proposal, and shall use commercially reasonable efforts to enforce the provisions of any such confidentiality agreements, including by seeking injunctions to prevent any known breaches of any such agreements and to enforce specifically the terms and provisions thereof, except in each case if such Party's board of directors determines in good faith, after consultation with its outside legal counsel, that taking such action would be reasonably likely to be inconsistent with its fiduciary duties under applicable Law.

36.     Additionally, the Company must promptly advise Parent of any proposals or inquiries received from other parties.  Section 6.2(g) of the Merger Agreement states:

Each of the Company and Parent shall notify the other promptly (but in no event later than 24 hours) after receipt by such Party (or any of its Representatives) of any Company Acquisition Proposal (in the case of the Company) or Parent

Acquisition Proposal (in the case of Parent), or any inquiry, proposal or offer that would reasonably be expected to lead to a Company Acquisition Proposal (in the case of the Company) or Parent Acquisition Proposal (in the case of Parent), which notice shall include the material terms and conditions of any such Company Acquisition Proposal or Parent Acquisition Proposal, inquiry, proposal, offer or request, copies of any material written communications and draft documentation received relating to such Company Acquisition Proposal or Parent Acquisition Proposal and indicating the name of the Person making such Company Acquisition Proposal or Parent Acquisition Proposal, inquiry, proposal, offer or request, and thereafter the notifying Party shall keep the other Party reasonably informed, on a timely basis, of the status and material terms of any such Company Acquisition Proposal or Parent Acquisition Proposal, inquiry, proposal, offer or request (including any amendments thereto) and the status of any discussions or negotiations with such Person or its Representatives (without prejudice to the restrictions set forth in Section 6.2(a) and the other provisions of this Section 6.2) and provide copies of all material written communications and draft documentation received relating to such Company Acquisition Proposal or Parent Acquisition Proposal.

37.     Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Parent a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 6.2(f) of the Merger Agreement provides:

The board of directors of the Company, on the one hand, and the board of directors of Parent, on the other hand, shall not take any action set forth in Section 6.2(d) unless it has first:

(i) caused the Company or Parent, as applicable, to provide the other Party at least four Business Days' prior written notice of its intent to make an Adverse Company Recommendation Change (in the case of the Company) or an Adverse Parent Recommendation Change (in the case of Parent), in each case, in accordance with Section 6.2(d) (a "Notice of Superior Proposal"), which notice shall (A) state that the notifying Party has received a Company Superior Proposal or Parent Superior Proposal, as applicable, (B) specify the material terms and conditions of such Company Superior Proposal or Parent Superior Proposal, (C) identify the Person making such Company Superior Proposal or Parent Superior Proposal, and (D) enclose the most recent draft of any agreements intended to be entered into in connection with such Company Superior Proposal or Parent Superior Proposal (it being understood and agreed that the delivery of the notification contemplated by this clause (i) shall not, in and of itself, constitute an Adverse Company Recommendation Change or Adverse Parent Recommendation Change);

(ii) caused the notifying Party and its Representatives to negotiate, to the extent the other Party so wishes to negotiate, during such four Business Day period following delivery of the Notice of Superior Proposal (the "Notice Period"), in good faith with the other Party concerning any revisions to the terms of this Agreement that the other Party wishes to propose in response to such Company Superior Proposal or Parent Superior Proposal; and

(iii) following the end of the Notice Period, determined in good faith after consultation with its outside legal counsel and financial advisor, that such Company Acquisition Proposal or Parent Acquisition Proposal continues to constitute a Company Superior Proposal or Parent Superior Proposal, respectively, after taking into account any changes to which the other Party has committed in writing to make to this Agreement, and that the failure to make an Adverse Company Recommendation Change (in the case of the Company) or an Adverse Parent Recommendation Change (in the case of Parent) or to terminate this Agreement, in each case, in accordance with Section 6.2(d) would be inconsistent with its fiduciary duties under applicable Law; provided, however, that if, during the Notice Period, any revisions are made to the financial or other material terms of the Company Superior Proposal or Parent Superior Proposal that is the subject of such Notice of Superior Proposal, the notifying Party shall deliver to the other Party a new notice describing such revisions (and providing copies of the most recent draft of any agreements implementing such revisions) and shall comply with the requirements of clause (i) and clause (ii) of this Section 6.2(f) (except that the four Business Day Notice Period shall instead be a two Business Day Notice Period).

38.     The Merger Agreement also provides for a "termination fee" of $30 million payable by the Company to Parent if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Registration Statement Omits Material Information***

39.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

40.     As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

41.     First, the Registration Statement omits material information regarding the Company's, Cleveland-Cliffs', and the pro forma company's financial projections.

42. With respect to the Company's financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBITDAP, (c) Levered Free Cash Flow, and (d) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

43. With respect to Cleveland-Cliffs' financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBITDAP, (c) Levered Free Cash Flow, and (d) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

44. With respect to the pro forma financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Levered Free Cash Flow, and (c) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

45. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

47. With respect to Goldman's Implied Premia and Multiples analysis, the Registration Statement fails to disclose: (i) the total number of fully diluted shares of AK Steel common stock outstanding; and (ii) AK Steel's net debt.

48. With respect to Goldman's Illustrative Discounted Cash Flow Analysis for AK Steel, the Registration Statement fails to disclose: (i) the individual inputs and assumptions

underlying the discount rates ranging from 10.5% to 11.5% and the perpetuity growth rates ranging from 1.2% to 3.3%; (ii) all line items used to calculate unlevered free cash flow; (iii) the terminal values for AK Steel; (iv) Goldman's basis for applying terminal year multiples ranging from 6.0x to 7.0x; (v) the net debt of AK Steel; (vi) the unfunded pension and OPEB liabilities; and (vii) the fully diluted shares of AK Steel common stock.

49.     With respect to Goldman's Premia Paid Analysis, the Registration Statement fails to disclose: (i) the transactions observed by Goldman in the analysis; and (ii) the premiums paid in the transactions.

50.     With respect to Goldman's Illustrative Discounted Cash Flow Analysis for AK Steel Shares on a Pro Forma Basis, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5% and the perpetuity growth rates ranging from 0.4% to -1.9%; (ii) all line items used to calculate unlevered free cash flow; (iii) the terminal values for Cleveland-Cliffs on a pro forma basis; (iv) Goldman's basis for applying terminal year multiples ranging from 6.0x to 7.0x; (v) the estimates of the net debt and unfunded pension liabilities of Cleveland-Cliffs on a pro forma basis; and (vi) the fully diluted shares of Cleveland-Cliffs common stock outstanding.

51.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52.     Third, the Registration Statement omits material information regarding potential conflicts of interest of Goldman.

53.     The Registration Statement fails to disclose whether Goldman has provided past services to the Company or its affiliates, as well as the timing and nature of such services and the

amount of compensation Goldman received for providing such services.

54.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

55.     The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Recommendation of the AK Steel Board and Reasons for the Merger; (iii) Opinion of Goldman Sachs, AK Steel's Financial Advisor; and (iv) Unaudited Forecasted Financial Information.

56.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and AK Steel

57.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. AK Steel is liable as the issuer of these statements.

59.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

60.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

61.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

62.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

63.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

64.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Cleveland-Cliffs**

65.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66.     The Individual Defendants and Cleveland-Cliffs acted as controlling persons of AK Steel within the meaning of Section 20(a) of the 1934 Act as alleged herein.   By virtue of their positions as officers and/or Board members of AK Steel and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67.     Each of the Individual Defendants and Cleveland-Cliffs was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.     The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

69.     Cleveland-Cliffs also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

70.     By virtue of the foregoing, the Individual Defendants and Cleveland-Cliffs violated Section 20(a) of the 1934 Act.

71.     As set forth above, the Individual Defendants and Cleveland-Cliffs had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 17, 2020

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*

Brian D. Long (#4347)

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*